920 So.2d 920 (2006)
Kenneth E. LEWIS, Plaintiff-Appellant
v.
James C. SMITH and Continental Insurance Company, Defendants-Appellees.
No. 40,590-CA.
Court of Appeal of Louisiana, Second Circuit.
January 25, 2006.
*922 Ronald Kip Gates, Monroe, for Appellant.
Voorhies & Labbé by Cyd Sheree Page, Monroe, for Appellees James C. Smith and Continental Ins. Co.
Before WILLIAMS, STEWART and MOORE, JJ.
STEWART, J.
The plaintiff, Kenneth Lewis, filed this tort action after he was involved in an auto accident with the defendant, James Smith. Lewis claimed that he had a green light to proceed through the intersection, whereas Smith, who was traveling from the opposite direction of Lewis, claimed that he had a green arrow to turn left through the intersection. Based on a credibility determination, the trial court found that Smith had the green arrow and denied Lewis's claim. We find no error in this judgment and affirm.

FACTS
The collision happened on December 20, 2002, on a sunny afternoon in Monroe at the intersection of U.S. Highway 80 (named Louisville Avenue in the city) and North Third Street. Louisville Avenue is a four-lane road; North Third is a two-lane road. Smith was driving his Cadillac in the inside lane eastbound on Louisville; at the same time, Lewis was driving his Chevy pickup truck westbound on Louisville. Both were headed toward the intersection with North Third Street, where Smith intended to take a left turn at the traffic light.
Smith said that the traffic signal turned red as he was approaching it. So, he stopped his car behind an SUV that had stopped in front of him. Smith testified that another vehicle was stopped across the intersection in the inside westbound lane. According to Smith, the traffic signal changed to show a green left turn arrow in his favor. The SUV in front of him made a left turn across the intersection, and Smith followed into the intersection under the green arrow to make his left turn.
Lewis, who formerly was a bus driver in Monroe, testified that he was very familiar with the sequence of lights on Louisville and that he knew from past experience that after passing through green lights at Fifth and Fourth Streets, the light at the intersection of North Third would change to green as he approached it. He testified that as he approached the intersection with North Third Street, the light was red and a vehicle was stopped in the inside westbound lane ahead of him. Lewis said that he changed lanes to go around the vehicle as the light turned green, and he proceeded to go through the *923 intersection. When Lewis entered the intersection, the front of his truck collided with the passenger side of Smith's car. Lewis and his passenger sustained some injuries as a result of the crash, and a photo of Lewis's truck shows heavy damage to the front end.
The force of the collision pushed Smith's car into the southbound lane of North Third Street where it hit a car stopped at the traffic light. That car was driven by Lisa Parker. Parker said that the light facing her on North Third was red when she pulled to a stop at the intersection. She then began "digging in [her] purse" and did not look at the traffic light again, even after the accident. Parker did not see the accident happen. She testified that she had no idea how long she stayed at the light before the accident, but she guessed that it was "[p]robably less than a minute."
Another witness, Donna McCarty, also heard but did not see the accident happen. McCarty was at a Cracker Barrel/ Texaco store on the northeast corner of the intersection. As she was walking to her car, she glanced at the traffic on Louisville and saw a westbound vehicle stopped on the inside lane of Louisville at the traffic light. She also saw Lewis's vehicle change lanes to go around the car stopped at the traffic light. McCarty got into her car and heard the crash. She then exited her car. She testified that it was at most 10 seconds from the time she heard the crash to when she looked at the light at the intersection and saw that it was red for traffic on North Third Street. She could not see the lights controlling traffic on Louisville. McCarty went to the accident scene to check on the occupants of the vehicles, and she told Smith that she did not believe he was at fault.
The police officer who responded to the accident interviewed McCarty and wrote that she said the southbound signal on North Third was green. This led the officer to believe that Smith did not have a green arrow. At trial, McCarty disputed the correctness of the officer's report and stated that she told him the light was red. She believed that the officer simply misunderstood her. The officer's accident report, which was admitted into evidence, also states that Lewis said he was blinded by the sunlight just before the crash. Lewis denied that he said this. The correctness of the accident report in noting Lewis's lane of travel and the point of impact was also disputed at trial. The officer ticketed Smith at the accident scene. Smith testified that "when [the officer] looked at me [sic] drivers' license and saw that I was eighty-two years old, that shut it down right there. He didn't have nothing else to say to me. I was an old man."
Among the items introduced into evidence was a "traffic signal inventory" report and cover letter prepared by an engineer with the Louisiana Department of Transportation and Development ("DOTD"). No one from DOTD testified even though the report is far from self-explanatory. The cover letter describes the operation of the traffic signals at Louisville and North Third and explains that the eastbound left turn arrow on Louisville and the southbound right turn arrow on North Third are displayed at approximately the same time.
After taking the case under advisement, the trial court rejected Lewis's demand. The trial court prepared a judgment utilizing an unusual form with attached reasons for judgment prepared in a chart format designated as "Exhibit A" to *924 the judgment.[1] In its judgment, the trial court concluded that Smith had the green arrow. In "Exhibit A," the court presented a grid of its impressions of the testimony and other evidence which it described as the seven factors used to decide the case. The trial court found Smith to have "very high credibility and accuracy in all things." The trial court also noted that Lewis's testimony "added credibility to Defendant's [Smith's] ultimate testimony" and that Parker's testimony also supported Smith's version of the accident. From the adverse judgment, Lewis now appeals.

DISCUSSION
In his assignments of error, Lewis asserts that the trial court did not apply the presumption of liability against Smith, the left-turning motorist. Lewis asserts that the trial court did not place the burden on Smith of proving that he was free from negligence in making the left turn. Lewis urges this court to conduct a de novo review of the record due to the trial court's failure to apply the law governing claims against left-turning motorists. Lewis also asserts manifest error in the trial court's finding that Smith had the green arrow.
An appellate court may not set aside a trial court's finding of fact in the absence of manifest error or unless such finding is clearly wrong. Stobart v. State, through DOTD, 617 So.2d 880 (La.1993); Rosell v. ESCO, 549 So.2d 840 (La.1989); Brown v. Brookshire's Grocery Co., 38,216 (La.App.2d Cir.3/12/04), 868 So.2d 297. In fact, "where two permissible views of the evidence exist, the factfinder's choice between them cannot be manifestly erroneous or clearly wrong." Stobart, supra. The issue to be resolved by the reviewing court is not whether the trier of fact was right or wrong, but whether the factfinder's conclusion was a reasonable one in light of the evidence in the record. Theriot v. Lasseigne, 640 So.2d 1305 (La.1994); Stobart, supra.
Where legal error impedes the fact-finding process, the manifest error standard is no longer applicable, and, whenever possible, the appellate court should make its own independent de novo review of the record and render a judgment on the merits. Ferrell v. Fireman's Fund Ins. Co., 94-1252 (La.2/20/95), 650 So.2d 742. A legal error occurs when a trial court applies incorrect principles of law and such errors are prejudicial; legal errors are prejudicial when they materially affect the outcome and deprive a party of substantial rights. Lasha v. Olin Corp., 625 So.2d 1002 (La.1993).
A vehicle facing a green circular signal may proceed through the intersection but "shall yield the right-of-way to other vehicles ... lawfully within the intersection... at the time such signal is exhibited." La. R.S. 32:232(1)(a). A motorist *925 favored with a green signal when approaching an intersection cannot depend exclusively on the favorable light. Rather, the motorist has a duty to watch for vehicles already in the intersection when the light changed; this duty does not extend to looking for traffic that has not yet entered the intersection. Hampton v. Marino, XXXX-XXXX (La.App. 1st Cir.11/6/98), 725 So.2d 503, citing Horton v. State Farm Ins. Co., 25,943 (La.App.2d Cir.8/17/94), 641 So.2d 993.
Vehicles favored with a green arrow signal "may cautiously enter the intersection" to turn but "shall yield the right-of-way ... to other traffic lawfully using the intersection." La. R.S. 32:232(1)(b). A motorist attempting to make a left turn is under a duty to exercise a very high degree of care, even when executing the turn on the authority of an illuminated left turn signal. Christaw v. O'Bryant, 535 So.2d 1020 (La.App. 2d Cir. 1988), writ denied, 536 So.2d 1223 (La. 1989). A left turn is a dangerous maneuver, and a driver has a duty not to attempt the turn until he ascertains it can be completed safely. Noble v. Rideau, 38,699 (La.App.2d Cir.6/23/04), 877 So.2d 230, citing Cooley v. Trinity Universal Ins. Co., 37,701 (La.App.2d Cir.11/26/03), 862 So.2d 248, writ denied, XXXX-XXXX (La.3/12/04), 869 So.2d 825.
In civil suits, the plaintiff bears the burden of proving the negligence of the defendant by a preponderance of the evidence, but in certain situations the party bearing the burden of proof may be aided by a presumption. Miller v. Leonard, 588 So.2d 79 (La.1991). Left-turning motorists are burdened with a presumption of liability when involved in an accident. Miller, supra; USAA v. Craft, 37,909 (La.App.2d Cir.12/10/03), 862 So.2d 353, citing Lennard v. State Farm Mutual Auto. Ins. Co., 26,396 (La.App.2d Cir.1/25/95), 649 So.2d 1114. The burden rests on the motorist who desires to make a left turn to explain how the accident occurred and to show that he is free from negligence. Slagel v. Roberson, 37,791 (La.App.2d Cir.11/18/03), 858 So.2d 1288, writ denied, XXXX-XXXX (La.3/12/04), 869 So.2d 824. The defendant may discharge this burden by proving that the left turn arrow was illuminated. Christaw v. O'Bryant, supra.
We first address Lewis's argument that the trial court committed legal error in not recognizing or applying the presumption of liability against Smith, the left-turning motorist. Lewis complains that the trial court's judgment and reasons for judgment do not indicate what specific law was applied by the court in reaching its decision. A similar argument was made in Hampton v. Marino, supra, wherein the appellant asserted that de novo review was warranted because the trial court did not indicate the theory or evidentiary facts underlying its decision on liability. In rejecting this argument, the first circuit cited Bloxom v. Bloxom, 512 So.2d 839, 843 (La.1987), which set forth guidance for reviewing trial court decisions of "less than ideal clarity" as follows:
Although we may accord deference to a decision of less than ideal clarity if the trial court's path may reasonably be discerned, such as when its findings, reasons and exercise of discretion are necessarily and clearly implied by the record, we will not supply a finding from the evidence or a reasoned basis for the trial court's decision that it has not found or that is not implied.
See Hampton v. Marino, supra at 508. Upon reviewing the record, the first circuit found that it could reasonably discern the trial court's path in its reasoning and findings. The court noted that the appeal from the determination of liability involved *926 review of the trial court's factual findings as to the credibility of the witnesses and which motorist had the right-of-way at the intersection controlled by a traffic signal.
After our review of the record and the trial court's unorthodox judgment and reasons for judgment, we cannot conclude that the trial court misapplied the burden of proof such as would warrant a de novo review. The trial court's failure to articulate the law that it applied in making its factual findings is not a fatal flaw which would preclude review under the manifest error standard. The trial court made specific credibility determinations and factual findings in support of its judgment. The overriding fact question in the case was whether the left-turn arrow was green in favor of Smith when he entered the intersection. The trial court gave specific impressions of the evidence and made credibility determinations in support of its factual finding that the arrow was green. The trial court's findings, reasons, and exercise of discretion are clearly implied by the record. Appellant's disagreement with the trial court's conclusion does not establish that the trial court failed to consider and apply the correct law in its analysis of the testimony and evidence presented at trial. Thus, the manifest error standard applies.
Lewis and Smith each claimed to have been favored with a green light at the intersection. No other witness saw the signal lights governing these parties' movements. The disputes over the correctness of the accident report render that report practically meaningless in this matter. Lisa Parker claimed that she had a red light when she stopped on North Third Street at the intersection. However, she immediately began looking through her purse and did not look back at the light at any time. She could not say with any certainty how long she was at the light before the accident happened. The trial court found that Parker's testimony supported Smith's position. We find no manifest error in this finding. Smith claimed to have been stopped at the red light before getting a green arrow to proceed with his turn; Parker likewise stopped at a red signal light. The DOTD report and traffic signal inventory indicated that both Smith and Parker would have had red signals at the same time before getting green turn arrows. The fact that Parker had a red light when she stopped at the intersection does not establish that Lewis had a green light when the accident occurred some moments later or that Smith did not have a green arrow when he turned left at the intersection. Lewis's testimony about his encounter with the vehicle ahead of him was somewhat contradictory. According to Lewis's own testimony, he saw a vehicle stopped ahead of him on the inside westbound lane of Louisville at a red light. Lewis also claimed that he did not know why the vehicle was stopped and that he changed lanes to go around the stopped vehicle at the intersection on a green light.
Most significant for our review of this record, which presents two views of the evidence, is that the trial court found Smith to have "very high credibility and accuracy in all things." The manifest error standard demands great deference for findings based on determinations regarding credibility of witnesses. Ferrell v. Fireman's Fund Ins. Co., supra; Rosell v. ESCO, supra. Nothing in the record convinces this court that the trial court's credibility determination is not due the great deference owed under the manifest error standard.
The trial court's finding that Smith was favored with the illuminated green arrow was based upon a reasonable interpretation of conflicting evidence. Where there *927 are two permissible views of the evidence, the fact-finder's choice between them can never be manifestly erroneous or clearly wrong. Rosell v. ESCO, supra. Upon finding that the green turn arrow facing Smith was illuminated, the trial court concluded that Smith was not at fault for the accident. On this record, the trial court's reasonable finding of fact that Smith had the green arrow is sufficient to rebut the presumption of Smith's liability and to support the judgment in the defendant's favor. See and compare Noble v. Rideau, supra.

CONCLUSION
For the reasons stated, we affirm the trial court's judgment. Costs are assessed to the appellant.
AFFIRMED.
NOTES
[1] While we believe that the trial court is seeking greater efficiency and clarity in judgments by using a standardized form, we caution the trial court against future use of this method. Judgments should be tailored to meet the needs of each case. Utilizing a form on which selections are underlined, indicated by bold letters, or marked with an "x" or other symbol is subject to human error, can be less than clear once copied, and could easily result in confusion and mistakes. Moreover, reasons for judgment should be written to explain the findings of the court and / or the basis of the court's decision. While marginally sufficient in this case, we do not find the chart form used by the trial court to set forth its reasons for judgment in the form of factors in favor of each party to be the clearest and most direct method of conveying the court's reasoning. We strongly suggest that the trial court discontinue the use of such forms for judgments and written reasons for judgments in future cases.