STEWART, J.
hThe plaintiffs filed suit for damages after their daughters were involved in an automobile accident while driving to school. While making a right turn, they collided with the defendant’s vehicle, which had made a left turn at the intersection. The trial court denied both parties’ motions for summary judgment. After a bench trial, the trial court rendered judgment in favor of the defendant upon concluding that she had completed her left turn and was operating her vehicle within her lawful lane of travel when the accident occurred. The plaintiffs now appeal both the denial of their motion for summary judgment and the trial court’s judgment in favor of the defendant. While we find that summary judgment was properly denied, we also find that the trial court erred in concluding that the plaintiff driver was solely at fault in causing the accident.' Based on our review of the record, we cast each driver with 50 percent of the fault and award damages as set forth below.
FACTS
On the morning of May 10, 2012, Rita Calhoun (“Rita”), age 69, and Courtney Smart (“Courtney”), a minor who had gotten her driver’s license on February 2, 2012, were involved in an automobile accident on Highway 165 South (“the highway”), also referred to as Sterlington Road, just beyond its intersection with Garden Lane and Medical Park Drive in Monroe, Louisiana. On a green light, Rita had taken a left turn onto the highway from Medical Park Drive, and Courtney had taken a right onto the highway from Garden Lane. Medical Park Drive is to the east of the highway, and Garden Lane is opposite on the west side of the highway. Courtney and her |2passenger, Michele Holman (“Michele”), were on their way to school, and Rita was on her way to work after having just left her son’s medical office. The collision damaged the driver’s side rear quarter panel of the Hyundai Elantra that Courtney was driving and the passenger side front lower corner of Rita’s Toyota Avalon.
Courtney’s parents, Lisa and Roosevelt Smart, along with Michele’s father, Mikel Holman, filed suit against Rita and her insurer, State Farm Mutual Automobile Insurance Company. They claimed that *171 Courtney had turned right from Garden Lane onto the highway when Rita made a left turn without yielding the right of way at the intersection and hit Courtney’s vehicle. In her answer, Rita denied the allegations of the petition, and she filed an amended answer in which she alleged Courtney’s fault in causing in the accident by turning into her path.
The plaintiffs filed a motion for partial summary judgment on the issue of Rita’s liability. They alleged that, as the left-turning motorist, Rita was solely at fault in causing the accident. Thereafter, Rita filed a motion for summary judgment seeking dismissal of the plaintiffs’ claims. Rita asserted that she had completed her left turn and was heading south on the left lane of the highway when Courtney made a right turn from Garden Lane into the left lane of the highway and collided with her. Finding there to be genuine issues of material fact as to how the accident occurred, the trial court denied both parties’ motions, and the matter proceeded to a bench trial.
I aRita testified that she traveled on Medical Park Drive to the intersection with the highway, where she stopped at the red traffic light before taking a left onto the highway. She recalled a truck at the intersection opposite her with its blinker on, indicating that it was turning right. She stated that there was no other vehicle behind the truck. When the light turned green, Rita waited for the truck to turn before she made a left turn into the lane nearest the median, namely, the inside lane, of the highway. Even though cross-examination exposed some discrepancies between Rita’s testimony and statements made during her deposition and in discovery, Rita remained adamant that she was fully in the inside lane and headed south when Courtney came across into her lane ahead of her. However, Rita gave conflicting testimony as to whether she saw Courtney’s vehicle before the accident. Rita described the collision as “just a jolt” and noted that her air bag did not deploy. Rita denied sustaining any injuries, but plaintiffs’ counsel impeached her with a release signed by her and her husband purporting to settle her personal injury claim and his property damage claim against the Smarts. The release indicated that GEICO, the Smarts’ insurer, settled Rita’s claim for $3,200, when the cost of repairs to her vehicle was $1,620. Rita maintained that the release was wrong and that she did not get a check for $3,200.
Courtney testified that she was at the intersection waiting to turn right from Garden Lane onto the highway. She stated that she activated her blinker to signal her intent to turn right. When the light turned green, she turned right heading into the left, inside lane of the highway. Courtney |4explained that she needed to take a left turn one or two miles up the highway, so she turned into the left lane. She stated that the collision occurred as she was turning and that her vehicle was about halfway inside the left lane of the highway. Courtney testified that she did not see Rita’s vehicle prior to the impact.
Courtney’s passenger, Michele, testified that she was' looking down at her phone. Therefore, her testimony did not shed much light on what occurred. According to Michele, Courtney took a right turn into the left lane of the highway, and the impact occurred before the turn was completed.
Corporal Carrie Hatcher of the Monroe Police Department responded to the accident scene. Hatcher estimated that the collision occurred about 50 feet south of the intersection. She stated that debris from the accident was located in the inside lane of the highway and that the damage to the vehicles was indicative of a side *172 impact. According to Hatcher, both drivers gave conflicting versions of what occurred.
The trial court denied the plaintiffs’ motion for a directed verdict and took the matter under advisement. On July 31, 2014, the trial court rendered a judgment dismissing the plaintiffs’ claims. The trial court ruled in favor of Rita even while expressing some concern regarding her testimony about the settlement of her claim and while praising Courtney and Michele as “exceptional individuals” because they were among the valedictorians in them high school graduating class. The trial court concluded that the accident occurred in the left lane closest to the median, that Rita was lawfully operating her vehicle in that lane after having completed her leftjjturn, and that Courtney caused the accident because she did not turn into the right lane when making her right turn or she moved into the left lane soon after turning. The trial court’s ruling was based, in part, on its appreciation of the damage, as follows:
Considering that the back of the Plaintiffs’ vehicle was not damaged in any way and only the back quarter panel . portion of the Plaintiffs’ car was damaged, the Court must conclude that [Courtney] ran into [Rita], The Court believes that if [Rita] were to have caused the accident, then damage would be associated with the back of the Smart vehicle.
The plaintiffs now appeal the denial of their motion for partial summary judgment and the judgment in favor of the defendants.
DISCUSSION

Denial of Motion for Summary Judgment

The plaintiffs assert that the trial court erred as a matter of law in denying their motion for partial summary judgment on the issue of the defendant’s fault. First, plaintiffs argue that their motion was unopposed and that, when deciding whether to grant the motion, the trial court erred by considering evidence offered by the defendants in support of their motion for summary judgment. They cite that part of La. C.C.P. art. 966(F)(2) stating, “Only evidence admitted for purposes of the motion for summary judgment may be considered by the court in its ruling on the motion.” Second, plaintiffs argue that, in the absence of any opposition to their motion, the trial court erred in failing to grant it as required by La. C.C.P. art. 967(B), which states:
B. When a motion for summary judgment is made and supported as provided above, an adverse party may not rest on the mere allegations or denials of his pleading but his response, |fiby affidavits or as otherwise provided above, must set forth specific facts showing that there is a genuine issue for trial. If he does not so respond, summary judgment, if appropriate, shall be rendered against him.
The plaintiffs’ assertion that their motion for partial summary judgment was unopposed is unfounded. The defendants filed a motion for summary judgment seeking dismissal of the plaintiffs’ claims on the grounds that Courtney was the driver at fault in causing the accident. Together, both motions put the issue of fault before the trial court and required it to determine whether either side met the burden of showing there was no genuine issue of material fact and that summary judgment on either driver’s fault was appropriate. Requiring the defendants to file an opposition to the plaintiffs’ motion, in addition to their own motion for summary judgment on the issue of fault, would be a needless and duplicative endeavor. *173 We do not interpret the directive of La. C.C.P. art. 966(F)(2), that the trial court consider only the evidence- admitted for the purposes of the motion for summary judgment in its ruling, as prohibiting the trial court from recognizing the cross motion as an opposition to the other party’s summary judgment motion or from considering the evidence offered on the cross motion for summary judgment. The trial court properly considered both motions.
Moreover, our de novo review of the plaintiffs’ motion leads us to conclude that they did not meet the burden of showing that there was no genuine issue of material fact and that they were entitled to judgment as a matter of law on the issue of Rita’s fault. Contrary to the plaintiffs’ argument that Rita, as the left-turning driver, should bear all liability for the 17accident, the depositions of Rita and Officer Hatcher offered in support of their motion showed that genuine issues existed as to how the accident occurred, whether it occurred in the intersection or along the highway, and which driver was at fault. The plaintiffs’ motion, even if it had been unopposed, simply did not establish that they were entitled to summaiy judgment determining that Rita was solely at fault and 100 percent liable.
The plaintiffs’ assignments of error pertaining to the denial of their motion for partial summary judgment lack merit.

Final Judgment for Defendants

Appealing the judgment in favor of the defendants, the plaintiffs argue that the trial court erred in determining that the collision did not occur in the intersection and that it was not caused by Rita’s left turn. They further argue that the trial court erred by fading to apply the statutory duties imposed on left turning motorists. Alternatively, they argue that the trial court erred in not finding both parties partly at fault in causing the accident. We find some merit to the plaintiffs’ arguments.
The appellate court may not set aside a trial court’s factual findings in the absence of manifest error or' unless such findings are clearly wrong. Stobart v. State, through DOTD, 617 So.2d 880 (La.1993); Baker v. State Farm Mut. Auto. Ins. Co., 49,468 (La.App.2d Cir.1/21/15), 162 So.3d 405. To reverse the factual findings of the trial court, the appellate court must review the record in its entirety and find that- there is no reasonable factual basis for the findings and that the record establishes that the trier of fact was clearly wrong or manifestly erroneous. Salvant v. State, 2005-2126 (La.7/6/06), 935 So.2d 646; Baker, supra. The reviewing court does not ascertain whether the trier of fact was right or wrong, but whether its conclusion was reasonable in light of the evidence in the record. Stobart, supra; Lewis v. Smith, 40,590 (La.App.2d Cir.1/25/06), 920 So.2d 920.
The accident at issue occurred in the vicinity of an intersection controlled by traffic-control signals. The record indicates that both parties were turning on a green light. La. R.S. 32:232(l)(a) sets forth the duty of motorists facing a green circular light:
(a) Vehicular traffic facing a circular green signal may proceed straight through or turn right or left unless a sign at such place prohibits either such turn. But vehicular traffic, including vehicles turning right- or left, shall stop and yield the right-of-way to other vehicles and to pedestrians lawfully within the intersection or an adjacent crosswalk at the time such signal is exhibited.
A motorist approaching an intersection on a green signal light' “has a duty to watch for vehicles already in the intersection when the light changed; this duty *174 does not extend to looking for traffic that has not yet entered the intersection.” Lewis, 40,590, p. 6, 920 So.2d at 925.
A right-turning motorist shall make both the approach for the turn and the right turn as close as practicable to the right-hand curb or edge of the roadway. La. R.S. 32:101(A)(1).
Left-turning motorists are presumed liable when involved in an accident, and the burden is on the left-turning motorist to explain how the accident occurred and establish that he was not at fault. Lewis, supra. Because a left turn is a dangerous maneuver, a left-turning driver must ascertain that the turn can be completed safely before doing so. Id.; Baker, supra. A driver intending to turn left at an intersection “shall yield the right of way to all vehicles approaching from the opposite direction which are within the intersection or so close thereto as to constitute an immediate hazard.” La. R.S. 32:122.
Even though negligence is presumed on the part of a left-turning motorist, the favored motorist can also be assessed with comparative fault if his substandard conduct contributed to the cause of the accident. Upchurch v. State ex rel. La. Dept. of Transp. & Dev., 48,354 (La.App.2d Cir.8/17/13), 123 So.3d 228, writ denied, 2013-2153 (La.11/22/13), 126 So.3d 489.
Though the trial court’s reasons for judgment state that it had concerns about some of Rita’s testimony, the trial court still found in her favor after hearing the testimony of all the witnesses and reviewing the evidence presented. Reviewing Rita’s testimony, we find that it was confusing and contained contradictions as to whether she saw Courtney’s vehicle approaching to turn at the intersection before the accident occurred. Rita testified that she stopped on Medical Park Drive at the intersection because the signal light was red. A truck was at the light across the intersection with its blinker activated for a right turn. When the light turned green she waited for the truck to clear the intersection before she turned south into the lane nearest the median of the highway, namely, the inside lane. At first, Rita testified that she did not see Courtney’s vehicle until it hit hers. However, as questioning by plaintiffs’ counsel continued, Rita testified that she knew that Courtney “was coming straight across to turn | insouth as I was turning.” Rita also admitted that she saw Courtney’s vehicle, with its blinker on, behind the truck. Rita stated that she would not have “proceeded south had [Courtney] been coming straight” and that she “immediately turned left when [she] saw that there was nobody coming straight across.” Explaining her actions, Rita stated, “Well, if we were both going south and she stayed in her lane and I stayed in mine, I don’t know where I would have needed to yield.”
Contrary to Rita’s initial testimony that she did not see Courtney’s vehicle prior to the collision, the totality of her testimony establishes that she did see Courtney’s vehicle at the intersection. Nothing in Rita’s testimo'ny explains why she waited for the truck to turn right but then proceeded to turn ahead of Courtney whose vehicle, also with its blinker activated, was behind the truck. The fact that the accident happened in close proximity to the intersection and almost as soon as Rita had completed the left turn shows that Courtney’s vehicle was so close as to constitute an immediate hazard when Rita executed the left turn.
From our review of Rita’s testimony, along with the entirety of the testimony and evidence presented, we find manifest eiror in the trial court’s finding that Rita was free from fault. After yielding to *175 the truck turning right, Rita failed to yield to Courtney and instead executed a left turn ahead of her at the intersection. Rita apparently made this risky maneuver while believing, wrongly, that she was not required to yield so long as she turned into the inside lane and Courtney turned into the outside lane. Rita testified that the collision occurred almost as soon as she completed her turn. Even | ^though Rita may have been occupying the inside lane when she was hit, the occurrence of the collision just as she completed her turn highlights Rita’s negligence in turning left at the intersection ahead of Courtney’s vehicle. As the left-turning driver, Rita had the burden of explaining how the accident occurred and showing that she was free from negligence. Lewis, supra; Slagel v. Roberson, 37,791 (La.App.2d Cir.11/18/03), 858 So.2d 288, writ denied, 2003-3508 (La.3/12/04), 869 So.2d 824. She did not satisfy this burden.
Our finding of fault on the part of Rita does not absolve Courtney of all fault. Courtney admitted that the collision occurred as she was turning right into the inside lane of the highway. Her actions violated the statutory provision requiring right-turning motorists to turn as close as practicable to the right hand edge of the highway. La. R.S. 32:101. Also, Courtney denied seeing Rita’s vehicle prior to the impact. This is unbelievable considering the close proximity of the collision with the intersection. We must conclude that Courtney was not keeping a proper lookout for traffic at the intersection and did not ascertain whether she could make the turn with reasonable safety before proceeding.
It is clear from our review of the record that both drivers were negligent. Both Rita and Courtney had the opportunity to avoid the collision. Rita should have yielded to Courtney’s vehicle until it cleared the intersection, and Courtney should have seen Rita’s vehicle and should not have executed a wide right turn into the left, inside lane of the highway. We assess the comparative fault of the parties at 50 percent each.

1Damages

Where the trial court’s rejection of the plaintiffs demands is reversed on appeal, the appellate court is empowered to award damages when the record is complete. Myers v. Ford Motor Co., 486 So.2d 1030 (La.App. 2d Cir.1986). Because the record is complete with regard to damages, we will render an award rather than remand for the trial court to award damages stemming from this minor collision.
Lisa Smart, Courtney’s mother, testified that her insurer paid to repair her vehicle. The repair estimate was $1,759.24. She paid the $500 deductible and asked the court to award that amount if it found in their favor.
This was a very minor collision. No air bags deployed, and both vehicles were driven away from the accident scene. However both Courtney and Michele visited the emergency room at St. Francis Medical Center. Michele was taken to the emergency room by a parent, and Courtney was transported by ambulance at her mother’s insistence. Michele’s records state that she complained of some soreness of her left upper extremity and mild discomfort of the right. .Courtney’s records state that she complained of pain on her left side and neck. Both records refer to their pain as “minimal.” Courtney and Michele were treated by a chiropractor for their complaints. Michele incurred $2,465 in charges for treatment from May 16, 2012, through September 18, 2012. Courtney incurred charges totaling $6,553 for treatment from May 26, 2012, through November 15, 2012. Though the two teenag *176 ers underwent ongoing | ^chiropractic treatment, their complaints had little impact on their daily activities. Courtney, who was on a dance team at school, attended dance camp in June 2012. She also worked part-time as a cashier at a grocery store beginning that same month. She said she began feeling better in three months, at which time her visits to the chiropractor decreased. This coincided with the start of school. Courtney testified that she was feeling better and that “other stuff was coming up and so I wouldn’t be able to make certain appointments.” Michele’s testimony indicated that her complaints did not affect her cheer camp activities and practices that summer or enjoying her family vacations.
From our review of the record, we find that the plaintiffs are entitled to special damages. We award the Smarts $500 for the auto insurance deductible, $854.40 for the ambulance, $1,267 for the emergency room visit, and $6,553.00 for the chiropractor. We award the .Holmans $651.00 for Michele’s emergency room visit and $2,465 for her chiropractic treatment.
Even though Courtney had over 40 visits to the chiropractor and Michele had 15 visits, we find there to be minimal general damages resulting from this accident. We note that the teens were active in dance and cheer camp following the accident and while'under chiropractic care. The record shows that the complaints they had following the accident did not curtail their activities or enjoyment of life. We find that an award of $500 in general damages for each is appropriate for their minor injuries and related discomfort.
| uBecause of Courtney’s comparative fault, all of the above awards are to be reduced by 50 percent.
CONCLUSION
As explained in this opinion, we amend the trial court’s judgment to allocate fault evenly between Courtney Smart and Rita Calhoun for the collision and to award damages as set forth above. Costs of the appeal are divided evenly between the plaintiffs and defendants.
JUDGMENT AMENDED and AFFIRMED, AS AMENDED.
BROWN, C.J., dissents with written reasons.
DREW, J., dissents for the reasons assigned by C.J. Brown.