GARRETT, J.
Winnsboro Auto Ventures, LLC, D/B/A Winnsboro Chrysler Dodge Jeep ("Winnsboro Auto"), appeals from a city court judgment which found it liable to Port City Glass & Paint, Inc. ("Port City") for $ 575 owed on an open account and $ 1,000 in attorney fees. We affirm the lower court's judgment.
FACTS
In June 2016, Eric and Natasha West purchased a 2015 GMC Yukon Denali from Winnsboro Auto. That dealership, which is popularly known as Winnsboro Dodge, is owned by Brett Oubre. Simmie Brooks *519 was the salesman who sold the vehicle to the Wests. He and the Wests lived in Vicksburg, Mississippi. When the Wests required service on the vehicle's entertainment system shortly after the purchase, Brooks drove the vehicle back to Winnsboro to have the work performed. While he was driving the vehicle, a rock struck the windshield. Brooks arranged to have the windshield replaced by Port City, a Monroe business which frequently performed that sort of work for Winnsboro Auto. Subsequently, Jerry Donald, a driver who often worked for Winnsboro Auto, picked up the vehicle, took it to Port City, and returned it after the repair. Between the time when the windshield was damaged and when it was replaced, Brooks was fired by Wayne Marceau, the general manager of Winnsboro Dodge; however, he went to work at a Mississippi dealership owned by Oubre.
A question arose as to which party should pay for the windshield. Brooks testified at trial that he called Port City about the repair only after securing permission from his general manager, Marceau, to do so. He stated that Marceau later reneged on paying for the windshield out of vindictiveness toward him.
After trying unsuccessfully to obtain payment, Port City filed a petition and suit on open account in Monroe City Court against Brooks and the Wests on August 2, 2017. It alleged that the defendants contracted for service and owed $ 575, together with legal interest from date of judicial demand until paid in full, reasonable attorney fees, and all costs. Specifically, it asserted that Brooks, an employee of the Winnsboro dealership, sold the Denali to the Wests on June 15, 2016, and authorized installation of glass in the vehicle and that Port City installed the glass as requested. The petition alleged that, despite numerous demands, the defendants had refused to pay Port City's bill. Attached to the petition were copies of the invoice and the demand letters sent to the defendants. The invoice identified the customer as "Winnsboro Chrysler Dodge."
Brooks answered the petition in proper person. He stated that the dealership was supposed to pay for the windshield to be replaced because it was broken during transit. However, since he left the company, it had refused to pay the bill. Brooks further stated he had contacted Port City's attorney, who advised him to file papers on his own behalf.
On October 31, 2017, a default judgment was rendered against Ms. West in the amount of $ 575, plus legal interest and attorney fees of $ 1,500.
On November 7, 2017, Port City filed a motion for summary judgment against Brooks. An affidavit by Cindy Hayes, Port City's manager, was filed in conjunction with this motion. She recited the same facts alleged in the original petition. The motion was set for hearing on December 14, 2017. Although Brooks did not attend, the Wests were present for the hearing. In accordance with the plaintiff's request, the matter was continued without date. Plaintiff's counsel admitted that service on Brooks under the long-arm statute had not been perfected.
Ms. West, acting in proper person, filed a motion to vacate judgment on November 17, 2017. She asserted that the windshield was damaged when Brooks was driving the vehicle back to the dealership several weeks after the original purchase. The dealership had failed to add a second television console as agreed. The television was ordered and the dealership subsequently installed it once it arrived. Ms. West stated that she was told by Brooks that, during transit, a rock damaged the windshield, and they had to repair it. She alleged that she had no knowledge of the *520 facts of the repair and that she never authorized Port City to install anything. She stated that, had she been liable, she could have simply filed an insurance claim. She also asserted that she was in possession of several documents, including the Port City bill of sale/repair identifying Winnsboro Dodge as the client; a Winnsboro Dodge document stating that Port City had not followed protocol for receiving a proper work order for them; and the answer submitted by Brooks to the court stating that his employer was to pay for the windshield. Ms. West stated that she was not a resident of Louisiana, she was never notified of any hearing, and she was unable to afford legal representation. She concluded by stating that she believed this matter should have been resolved between the dealership, the plaintiff, and the salesman. The motion was set for argument on February 8, 2018.
On January 8, 2018, Port City filed an amended petition and suit on open account, in which it added Winnsboro Auto as a defendant. On February 9, 2018, Winnsboro Auto filed a peremptory exception of no cause of action. It asserted that Port City failed to allege any conduct by it or by its employee, Brooks, acting on its behalf. In the alternative, Winnsboro Auto raised a dilatory exception of vagueness, in which it contended that Port City's failure to expressly allege the conduct giving rise to Winnsboro Auto's liability created an undue hardship on it in preparing its defense. The exceptions were set for April 24, 2018. Port City filed an opposition to the exceptions. On March 6, 2018, the parties were sent notice of trial, which was also set for April 24, 2018.
On the morning of April 24, 2018, the court heard arguments on Winnsboro Auto's exceptions. It denied the peremptory exception of no cause of action and ordered the matter to proceed to trial later that morning.
At trial, Port City presented the testimony of Brooks and Lawson Criswell. Criswell testified that his parents owned Port City and that he worked for them. He stated that he was familiar with the accounts payable and also handled glass installation. He testified that Port City had installed multiple windshields for Winnsboro Dodge and that they never got purchase orders from Winnsboro Dodge prior to performing the work. According to Criswell, cars were sent to Port City by various people at Winnsboro Dodge, and, after the work was completed, they contacted Winnsboro Dodge for a purchase order number. Up until the instant case, they had never encountered any problem with receiving payment.
Brooks testified that, after the rock hit the windshield, he called Ms. West and Marceau, who told him that the dealership would pay for the repair. He stated that, during the two years he worked at the dealership, he was given authority to make purchases on its behalf, but the authorization was not in writing. He recounted verbally authorizing windshield repairs prior to the instant case. He also stated that he was aware of Winnsboro Auto paying Donald to pick up the vehicle for the windshield repair and returning it afterwards.
At the conclusion of the plaintiff's case, Winnsboro Auto moved for a directed verdict or dismissal and reurged its exceptions. After the trial court denied its motion, it called its controller, Pat Roberts, as a witness. She testified that she had worked for the dealership for 32 years; she had worked for Oubre since April 2014. According to her testimony, the Wests purchased their vehicle on June 13, 2016, and Brooks was fired on June 29, 2016. Roberts testified that no one was allowed to authorize payments for repairs without *521 a purchase order, which was obtained in advance of the work being performed. She maintained that a purchase order was refused in the instant case because they were unaware of anything happening to the windshield. She also stated that she was unaware that the work had already been done in the instant case or that there was a history of Port City obtaining purchase order numbers from Winnsboro Auto after doing work. She indicated that, while she was authorized to issue purchase orders, another person in the office actually handled that. Roberts testified that, while she had an invoice for some repair on the Wests' vehicle on June 23, 2016, she could find no record of any work pertaining to its entertainment system. She also denied paying Donald to take the vehicle to Port City. Roberts admitted that she was not privy to any conversations between Brooks and Marceau about the windshield. According to her, Marceau no longer worked at the dealership and Donald had retired.
At the conclusion of the evidence, Port City moved to set aside the previously rendered default judgment against Ms. West. It also filed a written motion to that effect. Winnsboro Auto objected to the motion on the grounds that Port City had an obligation to mitigate its damages. The trial court subsequently granted the motion and signed an order setting aside that judgment.
In oral reasons, the trial court ruled in favor of Port City and against Winnsboro Auto, finding that proper authorization was given to Brooks by the general manager to have the windshield repaired. It specifically held that Brooks was the most credible witness, while finding Roberts' testimony that she did not know that purchase orders were being submitted after performance of the work was not credible. The court concluded that, although the dealership might have had the purchase order authorization policy in place, it was not followed in the course of day-to-day business. Furthermore, the court found the actions of Winnsboro Auto in the instant case to be "highly vindictive."
On May 8, 2018, the court signed a judgment against Winnsboro Auto, awarding Port City $ 575, plus attorney fees of $ 1,000.
Winnsboro Auto appealed.
EXCEPTIONS
Winnsboro Auto's first two assignments of error pertain to its exceptions. It contends that the trial court erred in denying its exception of no cause of action or, in the alternative, its exception of vagueness. It further asserts that the trial court erred in forcing it to go to trial on the same day its exceptions were denied, thereby giving it insufficient time to prepare its defense.
Law
The peremptory exception of no cause of action tests the legal sufficiency of the petition by determining whether the law affords a remedy on the facts alleged in the petition. Pesnell v. Sessions , 51,871 (La. App. 2 Cir. 2/28/18), 246 So.3d 686 ; Gipson v. Fortune , 45,021 (La. App. 2 Cir. 1/27/10), 30 So.3d 1076, writ denied , 10-0432 (La. 4/30/10), 34 So.3d 298. The exception is triable on the face of the petition; and, for the purpose of determining the issues raised by the exception, the well-pleaded facts in the petition must be accepted as true. Fink v. Bryant , 01-0987 (La. 11/28/01), 801 So.2d 346 ; Pesnell v. Sessions , supra . No evidence may be introduced at any time to support or controvert the objection that the petition fails to state a cause of action. La. C.C.P. art. 931.
An exception of no cause of action should be granted only when it appears beyond doubt that the plaintiff can *522 prove no set of facts in support of any claim which would entitle him to relief. If the petition states a cause of action on any ground or portion of the demand, the exception should generally be overruled. Every reasonable interpretation must be accorded the language used in the petition in favor of maintaining its sufficiency and affording the plaintiff the opportunity of presenting evidence at trial. Badeaux v. Southwest Computer Bureau, Inc. , 05-0612 (La. 3/17/06), 929 So.2d 1211 ; Stonecipher v. Caddo Par. , 51,148 (La. App. 2 Cir. 4/7/17), 219 So.3d 1187, writ denied , 17-0972 (La. 10/9/17), 227 So.3d 830.
The burden of showing that the plaintiff has stated no cause of action is upon the exceptor. The public policy behind the burden is to afford the party his day in court to present his evidence. City of New Orleans v. Board of Directors of La. State Museum , 98-1170 (La. 3/2/99), 739 So.2d 748 ; Villareal v. 6494 Homes, LLC , 48,302 (La. App. 2 Cir. 8/7/13), 121 So.3d 1246.
An appellate court reviews a trial court's ruling on an exception of no cause of action de novo because the exception raises a question of law and the lower court's decision is based only on the sufficiency of the petition. Mack v. Evans , 35,364 (La. App. 2 Cir. 12/5/01), 804 So.2d 730, writ denied , 02-0422 (La. 4/19/02), 813 So.2d 1088. See also Kinchen v. Livingston Parish Council , 07-0478 (La. 10/16/07), 967 So.2d 1137 ; Hebert v. Shelton , 2008-1275 (La. App. 3 Cir. 6/3/09), 11 So.3d 1197 ; Ordoyne v. Ordoyne , 2007-0235 (La. App. 4 Cir. 4/2/08), 982 So.2d 899.
The purpose of the exception of vagueness is to place the defendant on notice of the nature of the facts sought to be proved so as to enable him to identify the cause of action, thus preventing future relitigation after a judgment is obtained. However, the exception does not entitle the defendant to demand exactitude and detail of pleading beyond what is necessary to fulfill the obligations outlined above. If the plaintiff's petition fairly informs the defendant of the nature of the cause of action and includes sufficient substantial particulars to enable the defendant to prepare its defense, then the exception of vagueness will be denied. Casares v. James M. Brown Builder, Inc. , 44,561 (La. App. 2 Cir. 8/19/09), 17 So.3d 1022, writ denied , 09-2055 (La. 11/20/09), 25 So.3d 813. An appellate court reviews a judgment on an exception of vagueness under the manifest error standard of review because the district court's judgment is based on a factual determination. Succession of Gendron , 17-216 (La. App. 5 Cir. 12/27/17), 236 So.3d 802.
Discussion
Generally, the denial of an exception of no cause of action is a nonappealable interlocutory judgment. See La. C.C.P. arts. 1841 and 2083 ; Hall v. James , 43,263 (La. App. 2 Cir. 6/4/08), 986 So.2d 817 ; Ordoyne v. Ordoyne , supra . The same is true of a denial of an exception of vagueness. See Guidry v. Winder , 07-441 (La. App. 5 Cir. 11/27/07), 973 So.2d 814. However, when a nonappealable issue is raised in conjunction with appealable issues, the nonappealable issues may be reviewed to achieve judicial economy and justice. Riley v. Riley , 94-2226 (La. App. 4 Cir. 9/4/96), 680 So.2d 169, writ denied sub nom. Haspel & Davis Milling & Planting Co. v. Bd. of Levee Comm'rs of the Orleans Levee Dist. , 96-2430 (La. 12/6/96), 684 So.2d 932. Also, we have the discretion to convert an appeal of a nonappealable interlocutory judgment to an application for supervisory review. See Ordoyne v. Ordoyne , supra . Winnsboro Auto timely filed its motion for appeal (which specifically included the ruling on the exception of no cause of action)
*523 within the delays allowed for applying for supervisory writs. Also, the exception of no cause of action is intertwined with the assignment of error pertaining to being required to go to trial. Consequently, in this case, we will address the matter.
In the original petition, the plaintiff made the following allegation:
Defendant SIMMIE BROOKS was an employee of Winnsboro Chrysler Dodge Jeep & Ram. He sold a 2015 GMC DENALI to the defendants, ERIC WEST and NATASHA WEST on JUNE 15, 2016, at which time he authorized installation of glass in the vehicle.
In the amended petition, the plaintiff added Winnsboro Auto as a defendant without adding any other allegations.
While the petition does not specifically mention authority or apparent authority, it is implicit that Winnsboro Auto's alleged liability arose from the actions of its employee, Brooks, who authorized the installation of the glass in the vehicle he sold to the Wests on behalf of Winnsboro Auto. Every reasonable interpretation must be accorded the language used in the petition in favor of maintaining its sufficiency and giving the plaintiff his day in court. Consequently, based upon our de novo review, we affirm the trial court's denial of the exception of no cause of action.
Although the trial court did not specifically address the exception of vagueness, we likewise find that the petition fairly informed the defendant of the nature of the cause of action. As pointed out by the plaintiff in its opposition to the exceptions, the invoice to Winnsboro Chrysler Dodge, which provided details of the service provided, was attached to the petition. The petition and its attachments, which included the invoice to Winnsboro Chrysler Dodge, provided Winnsboro Auto with "sufficient substantial particulars to enable the defendant to prepare its defense."
As to Winnsboro Auto's complaint that it was forced to proceed to trial on the same day its exceptions were denied, we find no merit to this argument. The exceptions were set for hearing on April 24, 2018, by order signed on February 23, 2018. In early March 2018, Winnsboro Auto was given notice that trial was also set for April 24, 2018. This gave it ample time to prepare for arguing the exceptions and, in the event that neither exception was sustained, defending itself at trial.
HEARSAY
Winnsboro Auto argues that the trial court erred in allowing Brooks to give, over its objection, hearsay testimony that Marceau authorized the windshield repair and charge.
Law
A ruling on the admissibility of evidence is a question of law and is not subject to the manifest error standard of review. A party may not complain on appeal about an evidentiary ruling in the trial court unless the trial judge was given the opportunity to avoid the perceived error, and the ruling affected a substantial right of the party. Trascher v. Territo , 11-2093 (La. 5/8/12), 89 So.3d 357.
Hearsay is "a statement, other than one made by the declarant while testifying at the present trial or hearing, offered in evidence to prove the truth of the matter asserted." La. C.E. art. 801(C). Hearsay is inadmissible "except as otherwise provided by this Code or other legislation." La. C.E. art. 802.
The failure to make a contemporaneous objection to the admission of evidence waives the right of a party to complain that the evidence was improperly admitted.
*524 Hyland v. Am. Guarantee & Liab. Ins. Co. , 04-305 (La. App. 5 Cir. 9/28/04), 885 So.2d 30.
When hearsay evidence is not timely objected to, it becomes competent evidence and may be considered as any other admissible evidence. Turner v. Ostrowe , 2001-1935 (La. App. 1 Cir. 9/27/02), 828 So.2d 1212, writ denied , 02-2940 (La. 2/7/03), 836 So.2d 107.
Trial Testimony
During the direct examination of Brooks, the following exchanges occurred pertaining to Marceau authorizing the windshield repair:
Q. Okay. All right. So, you picked up the vehicle in Vicksburg and what did you do with it?
A. I proceeded to drive back to Winnsboro and, uh, as I was driving back a rock hit their windshield. I, uh, immediately called Ms. West on the phone and told her what happened, because, I told her that the dealership, uh, I had already talked to my manager at the dealership. He said no problem. He said to call Port City Glass and set it up and we'll pay for it.
Q. Okay. When you say you talked to your manager at the dealership, who are you talking about?
A. At that time, Wayne [Marceau] was the general manager.
...
Q. Okay. But in this situation, you're claiming that this Wayne had said no problem, we'll take care of it. And, then a follow-up with his own driver picking up, taking and bringing back the vehicle, you had not reason [sic] to believe they wouldn't be responsible for the payment?
A. Exactly.
...
Q. Okay. I believe the first statement [of Brooks' answer to the lawsuit] is: "The dealership was supposed to have paid for the windshield to replace [sic] because it was broken during transit." And, the, "But, since I left the, just left the company, they refused to pay Port City Glass." That's your statement?
A. That's my statement.
Q. And, you got that statement because - what is Wayne's last name?
A. Marceau.
Q. Marceau had told you to take care of it?
A. Yes.
Counsel for Winnsboro Auto made no objections to any of these statements. On cross-examination, the following colloquy took place:
Q. Okay. And, did you speak to Mr. Marceau that day?
A. I, sir, I can't, I mean, I got to speak to him. I was employed with him.
Q. About the windshield? Did you speak to him about getting the windshield repaired that day?
A. I called him the day of the break and told him what happened.
Q. So, the day of the break, you go to Mr. Marceau and got approval to get the windshield repaired?
A. Yes, I did.
...
Q. I didn't ask when you took it them [sic]. I'm asking when did you contact them about it? To arrange the repair?
A. I contacted Port City Glass after I got permission from my general manager to call.
After redirect examination, the trial judge asked Brooks a series of questions. Among other things, she asked him to recount the facts surrounding the breaking of the windshield.
*525 MR. BROOKS: I was driving the Wests' vehicle back to Winnsboro to get the televisions and the headphones. So, a rock flew up and broke the windshield. So, me being who I am, I talk to the customers and told them, Hey, a rock broke your windshield. It was in transit. Don't worry about it. We'll take care of it. To keep them happy. So, then, I called the store. Told Wayne, I said: Wayne, hey, I was driving the Wests' vehicle back to get everything done. A rock broke the windshield. He said, no problem. He said, when you get here, call Port City Glass, get a price, set up a time whenever the Wests could get it there to get it done. So, I told him, I said, they won't be able to take it because they stay in Vicksburg. He said okay.
MR. BOOTHE [Winnsboro Auto's attorney]: Your Honor, this is, I apologize. I need to object here. This is getting far into the hearsay range of ...
COURT: Well, these are the Court's questions. So, you can ask whatever you'd like once I'm finished. Go ahead.
MR. BROOKS: And, he said set up a time for them to get it. I said, but they won't be able to. He said, fine. You set up a time where you could get it. We'll get a driver to keep them happy. And, that's what I did.
Discussion
The only time Winnsboro Auto objected to Brooks' testimony was during the trial court's questioning of him after he had been extensively questioned by the parties. By this point, the testimony pertaining to Marceau approving the repair of the windshield at the dealership's expense had already been admitted without objection several times, including during cross-examination. Consequently, we find no merit to this assignment of error.
OTHER DEFENDANTS
Two assignments of error concern Winnsboro Auto's codefendants. Specifically, one assignment argues that the trial court erred in not finding liability on the part of any of the codefendants, while the other maintains that the trial court erred in vacating the default judgment against Ms. West.
Law
The appellate court may not set aside a trial court's factual findings in the absence of manifest error or unless such findings are clearly wrong. Stobart v. State, through DOTD , 617 So.2d 880 (La. 1993) ; Smart v. Calhoun , 49,943 (La. App. 2 Cir. 7/29/15), 174 So.3d 168. To reverse the factual findings of the trial court, the appellate court must review the record in its entirety and find that there is no reasonable factual basis for the findings and that the record establishes that the trier of fact was clearly wrong or manifestly erroneous. Salvant v. State , 05-2126 (La. 7/6/06), 935 So.2d 646 ; Smart v. Calhoun , supra. The reviewing court does not ascertain whether the trier of fact was right or wrong, but whether its conclusion was reasonable in light of the evidence in the record. Stobart v. State, through DOTD , supra ; Mosley v. Griffin , 50,478 (La. App. 2 Cir. 2/24/16), 191 So.3d 16.
Although it may have made different factual findings and reached a different decision, the appellate court must not reweigh the evidence or substitute its own factual findings. Where the trial court's factual conclusions are based on credibility determinations of a witness, the manifest error standard demands great deference to the trier of fact. Although an appellate court may feel its own evaluations of credibility and reasonable inferences of fact are as reasonable as those of the trial court, the reviewing court should not disturb *526 reasonable factual findings when there is conflict in the testimony. Mosley v. Griffin , supra .
Where two permissible views of the evidence exist, the fact finder's choice between them cannot be manifestly erroneous or clearly wrong. Stobart v. State, through DOTD , supra ; Moy v. Brookshire Grocery Co. , 48,177 (La. App. 2 Cir. 6/26/13), 117 So.3d 611.
Louisiana's three-tiered court system allocates the fact finding function to the trial courts. Because of that allocation of function (as well as the trial court's normal procedure of evaluating live witnesses), great deference is accorded to the trial court's factual findings, both express and implicit, and reasonable evaluations of credibility and reasonable inferences of fact should not be disturbed on appellate review of the trial court's judgment. Virgil v. American Guarantee & Liab. Ins. Co. , 507 So.2d 825 (La. 1987) ; Moy v. Brookshire Grocery Co. , supra .
Discussion
The trial court heard the testimony and observed the witnesses. It made strong credibility calls in favor of Brooks and against Roberts, Winnsboro Auto's controller. Based upon its evaluation of the evidence, the trial court concluded that Brooks was telling the truth about Marceau authorizing the repair of the windshield at the dealership's cost. It further determined that, while Winnsboro Auto might have had a purchase order authorization system on paper and in theory, it was not actually followed in the company's daily reality. This conclusion was supported by not only the testimony of Brooks, but also that of Criswell, the plaintiff's employee who had dealt with Winnsboro Auto on several occasions and had never before had difficulty being paid. Based upon these factors, we find no manifest error in the trial court's ruling that Winnsboro Auto was solely responsible for the debt at issue here.
As to Ms. West, after reviewing the evidence in its entirety, the plaintiff admitted its error in seeking payment from her. The trial court, based upon its consideration of the evidence and in light of its credibility determinations, agreed that Winnsboro Auto was solely responsible for incurring the debt. Accordingly, we find the trial court did not err in vacating the judgment against Ms. West.
CONCLUSION
The trial court judgment is affirmed. Costs of this appeal are assessed against the appellant, Winnsboro Auto Ventures, LLC, D/B/A Winnsboro Chrysler Dodge Jeep.
AFFIRMED.